STEPHEN ROBERT ONSTOT
CA State Bar # 139319
1601 Barton Rd., # 3902
Redlands, CA 92373
Phone:  (805) 551-4180
Fax: (909) 384-5238

THOMAS G. JARRARD,
*Pro Hac Vice Pending*
WSBA# 39774
1020 North Washington Street
Spokane, WA 99203
Telephone:  (425) 239-7290
Facsimile:  (509) 326-2932

MATTHEW Z. CROTTY
*Pro Hac Vice Pending*
WSBA #39284, ISB #8653
905 West Riverside, Suite 409
Spokane, WA 99201-0300
Telephone: (509) 850 - 7011
Facsimile: (509) 703 - 7957

MICHAEL B. LOVE
*Pro Hac Vice Pending*
WSBA # 20529
Workland & Witherspoon, PLLC
601 West Main Ave., Ste. 714
Spokane, WA  99201
Telephone:     (509) 455-9088
Facsimile:     (509) 624-6441

Attorneys for Plaintiff Joshu Osmanski

**IN THE UNITED STATES DISTRICT COURT**
**IN AND FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOSHU OSMANSKI,<br><br>                                 Plaintiff,<br><br>v.<br><br>CATHAY PACIFIC AIRWAYS LTD; and,<br>USA BASING, LTD.,<br><br>                                 Defendants. | NO. CV-<br><br>COMPLAINT FOR VIOLATIONS OF THE UNIFORMED SERVICES EMPLOYMENT AND REEMPLOYMENT RIGHTS ACT, DEMAND FOR DAMAGES AND JURY TRIAL<br><br>EXEMPT FROM FILING FEES UNDER 38 U.S.C. 4323(h)(1) |

"We have a business to run and no government or any other entity is part of any agreement that will provide an impediment to our business." – Meeting between Cathay Pacific Manager Mark Hoey and Joshu Osmanski discussing Mr. Osmanski's military obligations (October 12, 2010).

COMES NOW Plaintiff JOSHU OSMANSKI, by and through his attorneys, and alleges:

COMPLAINT FOR
VIOLATIONS OF USERRA, DEMAND FOR
DAMAGES AND JURY TRIAL - 1

## I.    PARTIES AND JURISDICTION

1.      Plaintiff, Joshu Osmanski ("Mr. Osmanski") resides in New Orleans, Louisiana, is a member of the United States Navy Reserve (USNR), and worked for the above-captioned defendants at all times relevant to this lawsuit while also serving in the USNR. At all times relevant hereto Mr. Osmanski served honorably in the USNR.

2.      Defendant Cathay Pacific Airways, Ltd. ("Cathay") is a foreign corporation that is authorized to, and conducts business within, the State of California with a place of business located at 360 Post Street, San Francisco, CA 94108.  At all times relevant, Defendant Cathay acted by and through its duly authorized agents and/or employees, who were then and there acting within the course and scope of their employment with such defendant. Defendant Cathay is an "employer" under the Uniformed Services Employment and Reemployment Rights Act (USERRA).  Although, as will be set out below, Cathay constantly criticized (and ultimately fired) Mr. Osmanski on account of his US Navy Reserve obligations, it received (and still receives) millions of dollars in federally guaranteed loans during the timeframe relevant to this lawsuit.[1]

3.      Defendant USA Basing Limited is a foreign corporation and a wholly owned subsidiary of Cathay.   On information and belief, Defendant USA Basing Limited acted under the direction and control of Defendant Cathay and transacts business within the State of California. Defendant USA Basing Limited is an "employer" under USERRA.   Collectively USA Basing Limited and Cathay are referred to as "Defendants."

---

[1] Cathay Pacific Airways, Ltd. Prime Award Spending Data, *available at* http://www.usaspending.gov/search?form_fields=%7b%22search_term%22:%22Cathay+pacific+airways%22%7d#. VNKzlH1EaBA.email (last visited Feb 6, 2015).

COMPLAINT FOR
VIOLATIONS OF USERRA, DEMAND FOR
DAMAGES AND JURY TRIAL - 2

4.    This Court has jurisdiction under 38 U.S.C. § 4323(b)(3) for Plaintiff's claims under USERRA. Venue is appropriate in this district under 38 U.S.C. § 4323(c)(2) because Defendants have a place of business in San Francisco, California.

## II.    INTRADISTRICT ASSIGNMENT

5.    Cathay transacts business in San Francisco County; therefore, pursuant to local rules it should be assigned to the San Francisco/Oakland Division.

## III.    FACTS

6.    Plaintiff Joshu Osmanski is an adult residing in New Orleans, Louisiana. At all times relevant hereto, Plaintiff was an F/A-18 fighter pilot in the USNR, holding the rank of Lieutenant Commander. As such, Plaintiff at all relevant times was a member of a "uniformed service" under USERRA, 38 U.S.C. § 4303(16).

7.    On November 12, 2007, Cathay hired Mr. Osmanski as a First Officer on Cathay's Freighter P747-400F with JFK International Airport as Plaintiff's home base.

8.    During the course of his employ with Cathay employees Robert Petrie, Mark Hoey, and David Lomax supervised Mr. Osmanski and controlled Mr. Osmanski's employment opportunities by, without limitation, deciding to allow or disallow Mr. Osmanski workplace leave and ultimately terminating Mr. Osmanski's employment.

9.    At the time of Mr. Osmanski's hire, he was a member of Fighter Attack Squadron 204 (VFA 204) in which he served as a Naval Aviator flying the F/A-18, holding the rank of LCDR. Prior to this reserve obligation, Mr. Osmanski served on active duty, including flying combat sorties in support of "Operation Iraqi Freedom" and "Operation Southern Watch" and was honorably discharged from such service.

10.     The U.S. Department of Defense (DoD) requires both active duty and reserve military units, like VFA 204, to maintain certain levels of combat readiness.   The DoD's military readiness requirement gains increased significance in times of armed conflict, such as the timeframe following the events of September 11, 2001. To that end, the USNR repeatedly called Mr. Osmanski away from Cathay for military training so as to maintain VFA 204's operational readiness. During the 2008 and 2009 timeframe Mr. Osmanski was able to conduct his military duty in a manner that generally did not interfere with Cathay's scheduling requirements; however, in the late 2009 early 2010 timeframe things changed as Mr. Osmanski's military obligations significantly increased.

11.     And by the early 2010 timeframe Cathay began to detest Mr. Osmanski's military obligations.

12.     U.S. Department of Labor ("DOL") regulations governing USERRA require servicemembers, like Mr. Osmanski, to give reasonable advance notice of military obligations and further require that "[t]he employee's notice to the employer may be either verbal or written.  The notice may be informal and does not need to follow any particular format." 20 C.F.R. §1002.85(c)&(d). At times "[i]t may be impossible or unreasonable to give advance notice under certain circumstances.  Such circumstances may include...a requirement that the employee report for uniformed service in an extremely short period of time." 20 C.F.R. §1002.86(b).

13.     Once an employee provides notice of his or her military obligation the employer has no choice but to allow the employee to perform the military service.  Indeed, DOL regulations make clear that an "employee is not required to ask for or get his or her employer's

COMPLAINT FOR
VIOLATIONS OF USERRA, DEMAND FOR
DAMAGES AND JURY TRIAL - 4

permission to leave to perform service in the uniformed services.   The employee is only required to give the employer notice of pending service." 20 C.F.R. §1002.87.

14.     On June 2, 2010, Mr. Osmanski received late notice from his military unit that placed Mr. Osmanski on military orders for the June 3-6, 2010, June 15-20, 2010, June 25-27, 2010, and July 11-24 timeframes. Mr. Osmanski immediately informed Cathay manager Robert Petrie of military obligations and apologized for the late notice.

15.     On June 3, 2010, Mr. Petrie replied, via email:

Joshu,

At this stage you have not been released by the Company to conduct your recently notified Military obligations therefore your Cathay Pacific roster obligations stand until such times as you furnish without delay copies of your deployment orders. You will be notified accordingly whether they will be approved or not. It is quite unacceptable for you to indicate 1 day in advance adjustments to your Reserve Duties which are secondary to your responsibilities to your prime employer. I look forward to receiving copies of your orders for consideration at your earliest convenience.

Regards Bob.

16.     On October 12, 2010, Cathay Pacific Managers Mark Hoey and Neale Nowasade and Mr. Osmanski, while at a meeting in Hong Kong, engaged in a lengthy discussion during which Mr. Osmanski's military obligations were discussed. During that conversation Mr. Hoey, in the context of Mr. Osmanski informing the company of military-mandated leave, stated, "[w]e have a business to run and no government or any other entity is part of any agreement that will provide an impediment to our business." During that conversation Mr. Hoey and Mr. Noawsade stated that Mr. Osmanski needed to choose between his employment with Cathay or serving in the military.

COMPLAINT FOR
VIOLATIONS OF USERRA, DEMAND FOR
DAMAGES AND JURY TRIAL - 5

17.     On or about January 1, 2011, informed Mr. Petrie of military duty scheduled for February 1 – 27, 2011, and March 8-25, 2011. Shortly thereafter Mr. Osmanski informed Mr. Petrie of military duty scheduled for April 4-8, 2011.

18.     On or about March 11, 2011, Mr. Petrie responded to Mr. Osmanski's military leave notification and required Mr. Osmanski, against his wishes, to take unpaid leave (ULV) for the April 4-10 timeframe as opposed to allowing Mr. Osmanski to use, upon information and belief, paid leave he accrued before embarking on his military service and/or accrued while on unpaid leave as allowed by company policy. USERRA 38 U.S.C. §4316(d) forbids an employer from requiring an employee to use unpaid leave, while on military duty, when the employee has paid leave available to use during the military duty.

19.     On or about March 14, 2011, Mr. Osmanski responded to the above-email and informed Mr. Petrie of additional military leave obligations for April 2011.

20.     On or about March 14, 2011, David Lomax responded to Mr. Osmanski's above-referenced response stating:

> Dear Joshu,
>
> You will have to excuse me for stepping in but having monitored your situation for some considerable time, I'm afraid that as the manager responsible for your employment I feel that I have no choice. What you as an individual have to understand is that your fleet managers have a responsibility to the Company, especially when it is perceived that the Company's good will and the good will of its employees is being taken advantage of. Many of us are either ex-military or have a standing commitment to support our armed forces and I have to tell you that in no military force does a simple email from an individual qualify in any way, shape or form as documentary evidence of forthcoming military service. Not only have you been repeatedly asked for proof of service, but your Commanding Officer has also been contacted on numerous occasions with similar requests as the Company has attempted to fulfil its obligations under the guidance in USERRA; all to no avail.  With this in mind, I shall ask you politely to supply or arrange for the supply of the required documentation immediately. Failure to supply the requested documentation will be viewed as a breach of your contractual obligations under the applicable Conditions of Service.

Best Regards

Dave Lomax
Manager USAB

21.     Contrary to the last sentence of Mr. Lomax's March 14, 2011, email, USERRA, 38 U.S.C. §4302(b) makes clear that it "supersedes any State law (including any local law or ordinance), contract, agreement, policy, plan, practice, or other matter that reduces, limits, or eliminates in any manner any right or benefit provided by this chapter, including the establishment of additional prerequisites to the exercise of any such right or the receipt of any such benefit."  USERRA requires simple notice of an employee's military obligations.  Cathay and Mr. Lomax cannot require anything more.

22.     On or about March 15, 2011, Mr. Osmanski's military commander, Commander Douglas Cochran emailed David Lomax stating:

Dave,

I take much offense to your statements. My name is CDR Douglas A Cochran, and I am the Commander Officer of Strike Fighter Squadron 204. I have only been contacted directly by Robert Petrie on one occasion. I tried numerous times to return his call with no response. Now I deem your last email as not only disre-spectful to a US Service member serving honorably for this great nation but to my personal integrity. Not that I am required to do so under USERRA, but I can con-firm all of Mr Osmanski's military service. I do not know what nation or service you served for but under US Law, all military members have rights and you are stepping very close to violating his rights. Below I have attached some "USERRA for dummies" information for your review. Pay particular attention to the second Q & A. Please contact me directly if you have any concerns about any past or fu-ture military requirements that I place on Mr Osmanski.
R/

CDR Douglas A Cochran
Commanding Officer, VFA-204

23.     Although on notice of Mr. Osmanski's rights under the law, Cathay required Mr. Osmanski to take unpaid leave in order to fulfill his military obligations even though Mr.

COMPLAINT FOR
VIOLATIONS OF USERRA, DEMAND FOR
DAMAGES AND JURY TRIAL - 7

Osmanski still had, upon information and belief, paid leave available to use and/or accrued paid leave during his unpaid leave timeframe per company policy.

24.   On March 24, 2011, Cathay placed Mr. Osmanski on a forced unpaid leave of absence on grounds that the frequency of Plaintiff's military obligations precluded a window of time sufficient to allow Plaintiff to receive training.   By way of comparison, Cathay places similarly situated (e.g. sick and pregnant) employees on paid long term leave.

25.   On September 13, 2011, while still on the forced unpaid leave of absence and in the course of performing military duty, Mr. Osmanski ejected from a malfunctioning F/A 18 fighter aircraft.  Mr. Osmanski ejected from the F/A 18 moments before the aircraft crashed and exploded.

26.   As a result of the ejection Mr. Osmanski sustained injuries to his neck, back, left heel, right knee, and right ankle.

27.   The US Navy classifies incident reports regarding military aircraft crashes as For Official Use Only (FOUO).   As such, the US Navy limits the dissemination of FOUO information.

28.   The US Navy classified incident report regarding Mr. Osmanski's aircraft crash as FOUO.

29.   The US Navy, as per its practice, initiated a Line of Duty (LOD) investigation as to the September 13, 2011, event.   As part of the LOD process the US Navy required Mr. Osmanski to obtain written confirmation (hereinafter the "LOD form") that Cathay (a) employed Mr. Osmanski and (b) Mr. Osmanski's rate of pay had Mr. Osmanski remained employed by Cathay.

30.     Mr. Osmanski, on or about October 1, 2011, informed Cathay of the accident, forwarded the LOD form to Cathay, and requested that Cathay complete the LOD form on or about, *inter alia,* October 15, 2011, October 19, 2011, October 28, 2011, November 1, 2011, June 12, 2012, June 29, 2012, and July 10, 2012.  Mr. Osmanski informed Cathay the US Navy needed the LOD form so the US Navy (not Cathay) could pay Mr. Osmanski his Navy salary while Mr. Osmanski recuperated from his military service related injury. Cathay refused to complete the LOD form.

31.     On November 1, 2011, Cathay informed Mr. Osmanski that Cathay expected him "to return to full duties with the Company as soon as you are fully fit." On that same day Dave Lomax, in an email, admonished Mr. Osmanski for allegedly failing to communicate with the company, abusing USERRA because Mr. Osmanski "elected to remain in the military as opposed to come back to work," and allegedly misleading Cathay about the voluntary/involuntary nature of Mr. Osmanski's military obligations. Mr. Lomax's directives to Mr. Osmanski were illegal for, at least, two reasons.  First, an employee's volunteering for military duty does not negate the employee's USERRA protections. 38 U.S.C. §4303(13); 38 U.S.C. § 4312(h). Second, Mr. Osmanski was not required to explain to Cathay the circumstances surrounding the voluntary/involuntary nature of his military obligation - - - all he was required to do was provide simple notice of his military obligations and nothing more. 20 C.F.R. §1002.85(a)&(c). Third, USERRA makes clear that an employee, on military leave, does not forfeit his or her reemployment rights by failing to respond to an employer's work related communication. *See* 20 C.F.R. § 1002.42(b).

32.     On November 2, 2011, Cathay acknowledged that Mr. Osmanski as per Cathay's request had notified Cathay's "Crew Control" of the injuries and impairments that he sustained

as a result of the "ejectment." Mr. Osmanski's military service was again criticized and Mr. Osmanski was informed that "you are still on Unpaid Leave."

33.     Following the September 13, 2011 ejectment, Mr. Osmanski was under medical care and treatment, including physical rehabilitation for the serious injuries sustained to his ankle. This medical care and treatment continued through 2012

34.     At all times relevant, Cathay was aware Mr. Osmanski was under medical care and treatment, including physical therapy, for the injuries sustained as a result of the September 13, 2011 ejectment.

35.     Shortly before February 29, 2012, Mr. Osmanski requested to return to work at Cathay.   On February 29, 2012, Cathay informed Mr. Osmanski that the company needed to declare him medically fit in order to be reemployed. By requiring Mr. Osmanski to prove his duty fitness pre-reemployment Cathay (again) violated the law. The USERRA, 38 U.S.C. § 4313, and governing regulations make clear that the law requires an employee to *first* bring a returning veteran back to work *and then* take steps to ensure whether the returning veteran is fit to do the job he or she did before commencing military leave or whether reasonable steps need be taken to employ the returning veteran in some other position within the company.

36.     On or about February 29, 2012, Mr. Osmanski emailed Cathay manager Paul Evans, an agent with apparent authority to receive employment applications, and requested to return to work. The USERRA regulations, 20 C.F.R. § 1002.118 state that a reemployment application may be made orally or in writing and "need not follow any particular format." Mr. Osmanski's request for reemployment complied with §1002.118.  And once an employee makes a request for reemployment the company has 14 days to reemploy the service-member. 20 C.F.R. § 1002.181. And an employer is required to promptly reemploy the returning service-

member even if documentation requiring an employee's eligibility for reemployment is not readily available. 20 C.F.R. §1002.122.

37.     On or about March 1, 2012, Mr. Osmanski supplied Cathay with medical documentation, from his physician, setting out the scope of his military-related injury. Cathay's physician acknowledged receipt of the documents. To wit: "I've just received the medical reports from your doctor and physio..."

38.     On March 2, 2012, Cathay's physician assessed Mr. Osmanski unfit to fly. To wit: "it would seem that you are not quite ready to be reassessed for fitness to return to flying as yet..."

39.     Mr. Cathay's employment policy, titled Conditions of Service (CoS), ¶28.3, mandate payment of a "Sickness Allowance" for an employee "assessed unfit for duty by a recognized medical practitioner." Although Cathay's physician declared Mr. Osmanski unfit for flying duty Cathay did not pay Mr. Osmanski the "Sickness Allowance." Instead Cathay demanded more paperwork of Mr. Osmanski, including paperwork relating to Mr. Osmanski's condition following the September 13, 2011, ejection event.

40.     On April 10, 2012, Mr. Osmanski informed Cathay that the Navy had authorized Mr. Osmanski to receive his post-ejection medical records but that he (Osmanski) had not received them.

41.     On April 15, 2012, Cathay's physician again demanded Mr. Osmanski's ejection related medical records and Mr. Osmanski, again, informed Cathay that the was still waiting on the post-ejection military records. And USERRA regulations make clear that an "employer is not permitted to delay or deny reemployment by demanding documentation that does not exist

or is not readily available. The employee is not liable for administrative delays in the issuance of military documentation." 20 C.F.R. §1002.122.

42.     On April 23, 2012, Cathay notified Plaintiff that his employment was terminated with an effective date of July 23, 2012. Cathay's April 23, 2012, letter gave Mr. Osmanski no reason for the termination.

43.     Cathay's CoS gives the company two options (without cause and with cause) by which it can terminate an employee's employment.  CoS ¶34.3, states that the company may terminate an employee's employment by giving "the other party not less than three (3) months' written notice."  CoS ¶34.4 allows the company to immediately terminate an employee's employment if, *inter alia,* the employee (i) "willfully neglects the interest of the Company" (ii) is "guilty of disobedience of a lawful and reasonable order", (iii) fails to comply with Company regulation, or (iv) is guilty of conduct that is prejudicial to the interests of the Company.

44.     Not knowing the reasons for termination, Mr. Osmanski asked Mr. Lomax to specify the reason(s) for the termination.

45.     On April 26, 2012, Mr. Lomax informed Mr. Osmanski that "the notice to terminate your employment has been carried out in accordance with your Conditions of Service (CoS), Sect. 34.3."

46.     On or about May 2, 2012, Mr. Osmanski contacted the Employer Support for Guard and Reserve (ESGR) and asked the ESGR to work with Cathay in allowing Mr. Osmanski to return to work.  On or about May 2, 2012, the ESGR informed Cathay of Cathay's obligations under USERRA with regard to reemploying returning service-members under USERRA.

47.     Cathay did not substantively respond to Mr. Osmanski's ESGR complaint.

COMPLAINT FOR
VIOLATIONS OF USERRA, DEMAND FOR
DAMAGES AND JURY TRIAL - 12

48.     Having failed to resolve the issue through the ESGR, Mr. Osmanski, in the June 2012 timeframe filed a complaint with the U.S. Department of Labor/VETS California office. The DOL/VETS is charged with conducting USERRA investigations on behalf of individuals, like Mr. Osmanski, who believe that they were discriminated against on account of their military service. Mr. Osmanski alleged, via his DOL complaint, that Cathay discriminated against him on account of his military service and that such discrimination violated USERRA.

49.     Upon information and belief, the California branch of the US DOL/VETS, including one of the specific DOL investigators who investigated Mr. Osmanski's complaint, has been (and may still be) the subject of a Congressional inquiry - - initiated by a USERRA claimant other than Mr. Osmanski - - relating to allegations that California branch negligently performed investigations on behalf of complaining service-members.

50.     Cathay, as is the pattern and practice of discriminating employers, denied Mr. Osmanski's military service had anything to do with its decision to end Mr. Osmanski's employment.  Instead Cathay, in a June 15, 2012, communication (among others) to the DOL justified its April 23, 2012, termination decision by relying on ¶34.4 – the "for cause" (not 34.3 – the "without cause") - of its CoS by accusing Mr. Osmanski of (a) failing (in 2010) a proficiency examination called a "line-check", (b) lying about the voluntary/involuntary nature of his military obligations (c) failing to communicate with the company while on military leave, (d) failing to set up remedial training opportunities given the failed check ride. Cathay accused Mr. Osmanski of violating company regulations and rules and stated its reason for terminating Mr. Osmanski's employment was because of Mr. Osmanski failing his "last clear chance" to comply with those rules.

51.     Cathay's June 15, 2012 justification for Mr. Osmanski's termination implicated CoS ¶34.4, the "with cause" termination provision; however, Dave Lomax' April 26, 2012, justification for Mr. Osmanski's termination implicated CoS ¶34.3, the CoS's "without cause" termination provision.

52.     Cathay's change in reasoning for Mr. Osmanski's dismissal is a pretext for unlawful discrimination.  Indeed, a "substantial change over time in the employer's proffered reason for its employment decision support[s] a finding of pretext." *Day v. Sears Holdings Corp.*, 930 F. Supp. 2d 1146, 1173 (C.D. Cal. 2013); *Washington v. Garrett,* 10 F.3d 1421, 1434 (9th Cir.1993) ("[I]n the ordinary case, *such fundamentally different justifications* for an employer's action would give rise to a genuine issue of fact with respect to pretext since they suggest the possibility that neither of the official reasons was the true reason." (emphasis added)).

53.     Points (a) through (d) are either after-the-fact termination justifications designed to hide discriminatory animus or motivating factors related to Mr. Osmanski's service - - - a justification that violates the law.  38 U.S.C. §4311. For example, notwithstanding the fact that Mr. Osmanski applied for reemployment in February 2012, he did not need to reapply for employment at Cathay in the April 2012 timeframe as he was still on military status recovering from service-incurred injuries. Further, Mr. Osmanski repeatedly communicated with the company and supplied the military records within his possession. Additionally, Mr. Osmanski's extensive military obligations prevented him from setting up the remedial training Cathay allegedly fired Mr. Osmanski for not completing. Indeed, an employee is not required to accommodate his employer's needs as to the timing and frequency or duration of the employee's military service. 20 C.F.R. §1002.104.

54.     On or about July 10, 2012 Mr. Osmanski, after requesting intervention from U.S. Senator Mary Landrieu (D. La.) received the medical records relating to the September 13, 2011, ejection.  Mr. Osmanski, through the DOL, transmitted those documents to Cathay on or about July 10, 2012. Yet Cathay still would not place Mr. Osmanski on paid sick leave in accordance with CoS ¶28, even though Cathay had the documents it requested and Mr. Osmanski was still employed with the Company given his termination date was not until July 23, 2012.

55.     Having been terminated by Cathay, Mr. Osmanski, worked as an analyst with Scientific Research Corporation from May 2012 to January 2013, and, effective January 17, 2013, began working as a pilot for Atlas Air.

56.     No one is perfect and Mr. Osmanski is no exception to that rule.  On January 26, 2013, Mr. Osmanski attempted to pass through a U.S. Transportation Security Administration (TSA) checkpoint, located in Honolulu, Hawaii, by presenting his Cathay identification credentials.  Mr. Osmanski was detained, questioned, allowed to proceed on his planned flight, but subsequently charged with violating 49 U.S.C. § 46314 for "Entering Airport Area in Violation of Security Requirements."

57.     The Federal Bureau of Investigation subsequently investigated the incident and, on or about February 5, 2013, interviewed Cathay general Manager Philip Herbert. During that interview Mr. Herbert admitted that Cathay terminated Mr. Osmanski's employment "because Osmanski was abusing his status as a U.S. Navy Reservist by repeatedly informing Cathay Pacific that he was being involuntarily called to duty with the U.S. Navy when it was later learned he was volunteering for his duty. As a result, Osmanski was unable to complete his initial training to become a pilot with Cathay Pacific."

58.   An employee's military service cannot serve as a "motivating factor" in an employer's adverse employment decision.

59.   Cathay's termination of Mr. Osmanski's employment was an adverse employment decision.

60.   Mr. Osmanski's status as a U.S. Navy Reservist was a motivating factor in Cathay's decision to terminate Mr. Osmanski's employment.

### IV.  CAUSES OF ACTION

61.   Defendant violated Mr. Osmanski's rights as guaranteed by the USERRA 38 U.S.C. §§ 4301 to 4335, including but not limited to: 38 U.S.C. § 4311 discrimination and retaliation in employment; 38 U.S.C. §§ 4312, 4313 reemployment rights; § 4316, and 20 C.F.R. § 1002.247, rights and benefits of persons absent from employment for service in the armed forces; and § 4318, and 20 C.F.R. § 1002.262(a), employee pension and benefit plans.

### (CAUSE OF ACTION NO. 1 – VIOLATION OF 38 U.S.C. §4311 – DISCRIMINATION & RETALIATION)

62.   In order to prevail on a USERRA employment discrimination action the plaintiff must establish membership in the uniformed services, an adverse employment action, and that the plaintiff's military obligation was a motivating factor in the employer's adverse employment action.

63.   Mr. Osmanski's military service was a motivating factor in Cathay's placement of Mr. Osmanski on a forced unpaid leave of absence.

64.   By forcing Plaintiff to take the unpaid leave of absence on account of his military service, Cathay unlawfully denied Plaintiff benefits of employment, including but not limited to the opportunity to work and earn wages, in violation of 38 U.S.C, § 4311(a).

65.    Other benefits of employment include the company filling out routine government-required paperwork on an employee's behalf (e.g. the LOD form), allowing the employee to receive paid sick leave as required under CoS ¶28, and allowing the employee to remain employed.

66.    Cathay's refusal to complete the LOD form was caused by Mr. Osmanski's military service.  Indeed, Cathay admits that it sought advice from a US Air Force officer named Lt Col King who, upon information and belief is not an attorney and not authorized to bind the US Government, informed Cathay that it did not have to "immediately" complete the LOD paperwork because of the ongoing military related investigation.   Yet Cathay never filled out the LOD form even though, upon information and belief, Cathay fills out government-required forms from other similarly situated non-military reserve pilots.

67.    Cathay's refusal to allow Mr. Osmanski the CoS ¶28 benefits is an adverse employment action motivated, in part, by Mr. Osmanski's military service as was Cathay's April 23, 2012, decision to terminate Mr. Osmanski's employment.

68.    Cathay's refusal to allow Mr. Osmanski the CoS ¶28 benefits and refused to fill out the LOD forms is also retaliation for Mr. Osmanski's May 2012 ESGR complaint and June DOL/VETs complaint given, *inter alia,* the temporal proximity between Mr. Osmanski's protected activity (complaining to the ESGR/DOL in May/June 2012) and the company's July 2012 denial of those benefits.

**(CAUSE OF ACTION NO. 2 – VIOLATION OF 38 U.S.C. §4316)**

69.    Defendants violated 38 U.S.C. § 4316, among other ways, by denying Mr. Osmanski the rights and benefits determined by seniority and such other rights and benefits not determined by seniority.   Or, put differently, USERRA requires that an employer provide

benefits to employees on long term military leave the same benefits that similarly situated employees on long term non-military leave receive. 38 U.S.C. § 4316 also bars an employer from requiring an employee to use paid leave to conduct military duty.

70.     Cathay's CoS, ¶28.3, provides, in part, that employees assessed unfit for duty by a recognized medical practitioner will, in any one period of three hundred and sixty five (365) days, be granted a maximum of ninety (90) days' Sick Leave, and paid Sickness Allowance to a maximum of one hundred and twenty-six (126) calendar days.

71.     Cathay's CoS, ¶30, mandates paid leave for non-military employees on long-term leave from the company.

72.     Cathay's CoS, ¶¶25, 25.8, authorizes paid annual leave and mandates payment of earned but unused employee annual leave following the employee's departure from the Company.

73.     Although Cathay provides paid long term leave for similarly situated non-military employees and mandates payment of Sickness Allowance for similarly situated non-military employees with injuries, Cathay did not provide Mr. Osmanski with those benefits of employment and, by doing so, violated USERRA.

74.     By requiring Mr. Osmanski to take unpaid leave for parts of his military service Cathay also violated 38 U.S.C. § 4316(d) to the extent it required Mr. Osmanski to use unpaid leave when Mr. Osmanski had, upon information and belief, paid leave available to use and/or was accruing paid leave per company policy.

**(CAUSE OF ACTION NO. 3 – VIOLATION OF 38 U.S.C. §4318)**

75.     Defendant violated 38 U.S.C. § 4318, among other ways, by denying Mr. Osmanski the right to make contributions to his retirement plan, by failing to give timely and

adequate notice to the plan administrator as required under the USERRA, and denying Mr. Osmanski the opportunity to fully participate in his retirement plan.

**(CAUSE OF ACTION NO. 4 – VIOLATION OF 38 U.S.C. §4312 & 4313)**

76.     In order to qualify for reemployment under USERRA the returning veteran must give his or her employer notice of the military obligation, serve less than five years (absent exceptions that do not apply here), serve honorably, and make a timely request for reemployment.

77.     Mr. Osmanski gave Cathay advance notice of the military obligation which encompassed the September 13, 2011 event.

78.     Mr. Osmanski served less than five years in the military during his employ with Cathay.

79.     Mr. Osmanski served honorably during the above-referenced period of service and remains in the USNR as of the date of this complaint.

80.     Mr. Osmanski, on or about February 29, 2012 and shortly before, requested to return to work at Cathay.

81.     Although Mr. Osmanski met the 38 U.S.C. §4312 reemployment criteria, Cathay failed to reemploy Mr. Osmanski. Cathay further violated 38 U.S.C. §4313 by requiring Mr. Osmanski, pre re-employment, to provide fitness for duty paperwork and by failing to reemploy Mr. Osmanski and explore alternate positions Mr. Osmanski could occupy given Mr. Osmanski's service connected disability.

**(CLAIM FOR LIQUIDATED DAMAGES – 38 U.S.C. §4323)**

82.     Plaintiff is entitled to liquidated damages under USERRA because the Defendant knew, or showed reckless disregard regard for whether its conduct was prohibited under USERRA.

83.     Defendant's conduct was willful as defined by §4323(d), 20 C.F.R. § 1002.312(c), because Mr. Osmanski gave Defendant multiple notices that its actions violated USERRA and Defendant showed reckless disregard for the matter.

84.     Among other things, Cathay alleges that Mr. Osmanski failed to comply with the CoS during Mr. Osmanski's military service.  Accordingly, any application of any agreement that constitutes any limitation on Mr. Osmanski's rights under USERRA, it is illegal, null and void, inapplicable and of no force or effect pursuant to 38 U.S.C. § 4302.

## V.     PRAYER FOR RELIEF

Plaintiff respectfully prays for:

A.     Compensation for all injury and damages suffered by Joshu Osmanski including, but not limited to, both economic and non-economic damages, in the amount to be proven at trial including back pay, front pay, pre and post judgment interest, lost benefits of employment, negative tax consequences of any award, liquidated damages, exemplary damages, and punitive damages as provided by law.

B.     Plaintiff's reasonable attorney, expert fees, and costs, pursuant to 38 U.S.C. § 4323, and as otherwise provided by law.

C.     For such other and further relief as this Court deems just and equitable, including injunctive relief enjoining future violations of the USERRA.

COMPLAINT FOR
VIOLATIONS OF USERRA, DEMAND FOR
DAMAGES AND JURY TRIAL - 20

Respectfully submitted this 17 day of March 2015.

STEPHEN ROBERT ONSTOT LAW OFFICE

By: _____

STEPHEN ROBERT ONSTOT
CA State Bar # 139319
1601 Barton Rd., # 3902
Redlands, CA 92373
Phone: (805) 551-4180
Fax: (909) 384-5238

LAW OFFICE OF THOMAS G. JARRARD, PLLC

By: _____

THOMAS G. JARRARD, *Pro Hac Vice Pending*
WA State Bar # 39774
1020 North Washington Street
Spokane, WA 99203
Telephone: (425) 239-7290
Facsimile: (509) 326-2932

CROTTY & SON LAW FIRM, PLLC

By: _____

MATTHEW Z. CROTTY, *Pro Hac Vice Pending*
WSBA #39284, ISB #8653
905 West Riverside, Suite 409
Spokane, WA 99201
Telephone: (509) 850-7011
Facsimile: (509)703-7957

WORKLAND & WITHERSPOON, PLLC

By: _____

MICHAEL B. LOVE, *Pro Hac Vice Pending*
601 West Main Ave., Ste. 714
Spokane, WA 99201
Telephone:      (509) 455-9077
Facsimile:      (509) 624-6441

Attorneys for Plaintiff Joshu Osmanski

COMPLAINT FOR
VIOLATIONS OF USERRA, DEMAND FOR
DAMAGES AND JURY TRIAL - 21

**JURY DEMAND**

Pursuant to Fed. R. Civ. P. 38 or any similar rule of law, Plaintiff demands a trial by jury

for all causes of action and issues for which trial by jury is available.

By: _____

STEPHEN ROBERT ONSTOT
CA State Bar # 139319
1601 Barton Rd., # 3902
Redlands, CA 92373
Phone:  (805) 551-4180
Fax:  (909) 384-5238

COMPLAINT FOR
VIOLATIONS OF USERRA, DEMAND FOR
DAMAGES AND JURY TRIAL - 22